UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO

YVETTE PINNOCK,

Plaintiff,

V.                                                                No. 1:24-cv-03290-NRN

TELETECH GOVERMENT SOLUTIONS,
LLC, and SHEILA BARANOWSKI

## OBJECTION TO COURT'S ORDER TO DISMISS WITH PREJUDICE

I Yvette Pinnock the Plaintiff acting on behalf of myself in Pinnock v. TTEC government solutions LLC and Sheila Baranowski, hereby Object in response to ECF NO. 29-30. under Fed. R. Civ. P. 46 on the basis that the Plaintiff is not time-barred and further disputes the Magistrate Judges findings, due to an inadequate review of case documents used to assist in the issuance of the Final order.

Plaintiff wishes to address several pressing issues with regards to the information the courts have alleged to have taken Judicial notice of. A. Plaintiff takes issue with the courts record of events. B. Issues with Judicial review of EEOC evidence.

1

ECF No. 29 P. 2 *a. Facts Alleged in Plaintiff's Complaint Plaintiff filed a Charge of Discrimination with the EEOC on August 10, 2024, alleging disability discrimination and retaliation against TTEC.

This is true in part, however key information has been omitted. I.E. Wage theft. refer to Plaintiffs complaint ECF No. 1 P. 4. "Former employers withheld my $1000 incumbent employee transfer bonus" See ECF No. 23 The defendant Sheila Baranowski was complicit in the act by denying having knowledge of such contractual agreement, if she was not also directly responsible for the theft. The appropriate statue falls under a violation of the Fair Labor Standards Act. At the time of composing the complaint, plaintiff was not aware of that. However, she clearly states that her contractual nondiscretionary bonus was withheld, which by law constitutes wage theft. Plaintiff asserts that the EEOC's negligence in not following standard procedure left the plaintiff ignorant to the facts. That said, refer to the EEOC ledger ECF. No 26 Exhibit A P. 19 Carlos Palafox, logged several times that he communicated with the Plaintiff on February 15th, 2024, and scheduled a charge interview. Plaintiff contradicts this assertion based on email evidence. Which indicates that the intake interview never occurred and the last correspondence between the plaintiff and investigator Palafox was on January 12th, 2024. See Exhibit P8 of P-P8. OB PDF 1 Why is this important?

1-Carlos Palafox lied about scheduling an interview.

2-Had he have done the interview as required, the plaintiff would have been better informed, when stating the claims.

3-Plaintiff was somewhat familiar with the EEOC's investigative procedures from her previous experience through filing her initial charge against her former employers (Faneuil purchased by TTEC).

During plaintiff's experience consulting with Investigator Gardner, she observed that he was professional, respectful, organized, and took his job seriously. During the intake interview with investigator Gardner, the plaintiff was informed and educated on the appropriate investigatory procedures, made aware of the statutes that would govern her complaint, and informed via a recorded telephone conversation with investigator Gardner the importance of obtaining, Names, Dates, and Times as this information is crucial in the event that the matter goes before the judge. See email Exhibits B-B28 OB PDF 2.

Which leads to the Plaintiff's next point of contention with the way the EEOC mishandled the Plaintiff's current charge. Refer to EEOC Ledger ECF No. 26 Exhibit A P. 16. Investigator Glenn Parker logs email correspondence with the plaintiff on July 15, 2024. During said email correspondence, investigator Parker who by the way never conducted an official/formal in-take interview with the Plaintiff, despite requests by both Justin Moore and Carlos Palafox to do so, refer to EEOC ledger P. 18 on April 2nd and April 4th, 2024, advised the Plaintiff that "The draft Charge was prepared using a minimally sufficient format utilized by the Commission – this format summarizes the allegations and does not identify names of individuals in the charge." See Exhibit S4 of S-S14 OB PDF 3. This deliberate negligence was enacted so as not to have to name Sheila Baranowski as being complicit in the the withholding of the Plaintiff's $1000 contractual nondiscretionary bonus.

*b. Factual Dispute Regarding the Date Plaintiff Received Notice of NRTS the Complaint contains no allegations regarding when Plaintiff received the NRTS. However, in Plaintiff's Opposition to the Motion to Dismiss, ECF No. 22, Plaintiff for the first time argues that she did not receive the NRTS until after August 21, 2024.

When plaintiff first received the Notice of Right to Sue letter on Saturday August 24, 2024, at 18:51pm, refer to ECF No. 26 Exhibit A P. 7, she was overcome with shock as it wasn't there two days prior on August 22nd, 2024, whilst in conference with the perspective employment attorney she was consulting with. Having said that, after the complaint was submitted the plaintiff asserts that it wasn't until she began gathering evidence that it became apparent that something sinister had occurred where the NRTS letter was concerned. Whilst on the subject of emails, when the Plaintiff first submitted her complaint on November 22, 2024, and took the screenshot of the precise timestamp at 3:59pm See ECF No. 24 Exhibit U. Plaintiff was perturbed and made a mental note to investigate further, the more pressing matter at that particular moment in time was getting to work as she was already running late. But unfortunately, because of Plaintiffs neurological disorder, she has a higher propensity to forget to follow up.

That said, certain triggers reignite the sense of urgency to address matters. On Monday November 25th 2024, when the plaintiff contacted the courts to amend her cover sheet, Ethan had advised that the complaint was received on Friday November 22nd, 2024, at 6:56pm, that is what triggered the plaintiff to begin digging, because she began to ponder more closely the inexplicable occurrences.

1. The EEOC NRTS suddenly appearing in her inbox.

2. The screenshot depicting a sent time of 3:59pm PT of complaint submission to the courts.

3. Ethan informing Plaintiff that the courts outlook inbox reflects receipt time of 6:56pm MT. In light of plaintiff's disability, she takes due diligence of researching for more clarity.

*b. Factual Dispute Regarding the Date Plaintiff Received Notice of NRTS Plaintiff stated at the March 11, 2025 Motion Hearing that the NRTS email notification appeared in her email inbox on August 24, 2024, but that it was incorrectly back-dated so that it appeared to have been delivered on August 21, 2024. ECF No. 27. Plaintiff theorizes in her opposition that "'bad actors' within the EEOC" "hacked [her email account] for the purpose of sliding the said EEOC NRTS letter into Plaintiff's inbox." ECF No. 22 at 18. In sum, Plaintiff claims that she did not see the NRTS email notification, nor the NRTS, until August 24, 2024.

With all do respect honorable magistrate judge, the document referenced as the opposition is actually ECFNo. 22 not ECF. No. 27 (ECF. No. 27 is the Plaintiffs Supplemental response.) Following on, during the March11th 2025 oral argument, the Plaintiff doesn't recall stating that the NRTS "appeared in her email inbox on August 24 2024, she would've reiterated and placed emphasis on the fact that the NRTS was not present during her consultation with the perspective attorney on August 22nd 2024. That said, Plaintiff stated in her compaint on Saturday August 24 2024, she accessed her email and downloaded the EEOC NRTS. Acknowledging that oddly it wasn't there on the 22nd of August. This fact became painfully obvious during the compilation of opposition evidence, when the plaintiff reverted back to her audio recording of the telephone consultation with aforemention law firm, at which point she realized it was missing and had been replaced with a recording that she did on January 5th 2025 during a hospital visit -See Exhibit K10-K12 email consultation confirmation with Lee Law, the screenshots of the call log Exhibit Aa-Aa1-Aa2, screenshot from Lee's website with all available phone numbers See Exhibit J, missing audio recording from August 22nd 2024 Exhibit Bb and audio recording properties Bb1. This was especially alarming because it was the very first Audio recording done on this device, one week prior to the second recording done on August 29th, 2024, which was still present.

In reference to ECF 22 page 18, upon review, plaintiff concedes, due to poor phrasing one could construe that the plaintiff was alleging the EEOC hacked her email. However, that was unintentional. What the plaintiff intended to confer, was that 'bad actors' within the Google organization most likely acted on behalf of 'bad actors' within the EEOC, by hacking into the plaintiffs Google mail aka 'Gmail 'account. This can be substantiated by Plaintiffs discovery that her Gmail account is primarily set to Pacific time. This is most notable as Plaintiff has only travelled between Eastern and Central timezones over the past 5 years. Plaintiff will further assert, she has never been to california or any other geographical location with a Pacific timezone. Let the record reflect that Google has a Headquarters in California.

Whilst Plaintiff admits to the err in the writing, she in no way is retracting her assertion that 'bad actors' within the EEOC are in collusion with her former employers. Plaintiff brings your attention to EEOC Ledger P. 21 on Monday October 23 2023 at 11:38am, charging party has downloaded document etc. via Publicportaluser. At practically the same time, Respondent, changes their password Via the Respondentportaluser. As a side note, coincidentally Plaintiff aka 'Charging Party' receives email notification that her password was changed. Refer to Exhibit Cc on Pg 10. How does that happen?

Respondentportal User remains logged in continuously between 11:39-11:44. Coincidentally, Charging party's address information is being updated at approximately the same time, most note worthy, on P. 20 at 11:50am Charging party's disability status, changes from True to False and the named party responsible has been redacted. Plaintiff notes this fact as important because on P. 23 of the EEOC ledger, Sarafina Kidane, on October 12th 2023 at 12:20 registered charging party's disability status as true. On the same page, on Thursday October 12th, 2023, at 12:13, Sarafina Kidane registered Respondent number of employees added as 501+.

By Tuesday November 21st, 2023, Justin Moore on P. 20 of the EEOC Ledger at 17:02:26 EST registered a change of address for Respondents to 6312 South Fiddlers Green Cir. Greenwood Village, he also added krystal.nova@ttec.com, and on P.19 changed the Respondent number of employee's to under 15. Factual significance, is that he was able to update respondents address, add a respondent, and changed respondents number of employees; with all entry's possessing identical timestamps. Furthermore, that updated address, is the exact address that plaintiff sent her process server to, who was subsequently turned away. See ECF No. 6.

On P. 19 of the EEOC Ledger, Carlos Palafox on February 15th, 2024, at 18:20:56 EST he registers correspondence with charging party, and also scheduled charge interview at 18:21:00 EST. Relevance, as previously stated, Plaintiff ceased communication on January 12, 2024, refer to Exhibit P8 on P.7. On P.12 of EEOC ledger, Respondent logs in via Respondentportal User on Monday August 12th, 2024 at 10:56:46. Then at 10:56:48 Respondent registers 'No action is required from you at this time.' Then at 10:57:17 respondent registers 'Respondent cage added as'. Thereafter, the date and time remain identical down to the second for 9 different entries. Namely, the same address 'Greenwood village' and 'Arapahoe'. This is contrary to the address where process server delivered summons, which is 7700 East Arapahoe Road Ste 220, Foxfield, CO 80112. See ECF 6. This activity begets the question of why there are so many address update entries that were not relevant at the time of process of service. Plaintiff theorizes that the address changing was a form of code to justify clandestine communications between 'bad actor' in the EEOC and the Respondents.

On P. 14 of the EEOC ledger, on July 30th, 2024, at 12:48:10, Philip Gross registers 4 partially redacted entries, all with identical times to the second, differing in content with codes DCP and SEP being added and removed.

Plaintiff is perplexed as to 1. what is the redacted information and 2. why is Philip Gross involved in her case at this stage at all, given there abrupt discontinuance of communication months prior. See email communication Exhibits Q-Q3 P. 8. On P.15 of the EEOC Ledger, on Monday July 15 2024 at 12:32, Glenn Parker registers an entirely redacted entry. Then by 12:35 he has generated the closure NRTS, by 12:46 he has uploaded a document type: CP in-take interview notes. On P. 16 of the EEOC Ledger, at 12:08, Glenn Parker registers 'Selected Deferral Office: Colorado Civil Righs Division'. Then at 12:10 Glenn Parker registers Intake interview note and Non-Disclosable: No. Plaintiff notes there are several issues at play here.
-Plaintiff was contacted via email by Justin Moore on April 2nd 2024 and advised to reach out to her new investigative officer Glenn Parker. See Exhibits R-R2 P. 14.

Upon instruction, Plaintiff sends Glenn Parker and email on April 8 2024. See Exhibit S P. 15. This is crucial information, as plaintiff hadn't had any communication whatsoever with Glenn Parker, sans the email she sent on April 8th 2024 to which no reply was received. Plaintiff takes issue with all the excessive entry's Glenn Parker enters on July 15 2024, because the Plaintiff was in Labor and had given birth that evening and theorizes that he somehow was aware that she was indisposed and not likely to respond timely. Hence why the first email he sent to Plaintiff was on July 15th 2024 and states that Plaintiff is time-barred and has until July 19th 2024 to respond and if she doesn't reply, it will be deemed that she no longer wishes to pursue the charge and the case will be closed. See Exhibits S1-S14.

*c. Additional Allegations Regarding the Date the Complaint was Filed

Plaintiff contends that she filed the Complaint on Friday, November 22, 2024 instead of Monday, November 25, 2024. In particular, Plaintiff argues that she emailed the Complaint to COD_ProSe_Filing@cod.uscourts.gov at 4:59 p.m. MT on November 22, 2024. ECF Nos. 24 at 1, 28-1 at 5. One minute later, at 5:00 p.m. MT, she received an automatic reply stating that "[t]he U.S. District Court for the District of Colorado has received your email," and "[a]ll filings received after 5:00 pm (MT) will be filed the next business day." ECF No. 28-1 at 6.

In accordance with D.C.COLO.LCivR 8.1. It is the Plaintiff's understanding that as a Pro se party, her case was designated to judicial officer Magistrate Judge N. Reid Neureiter by the Chief Judge Philip A. Brimmer. It was at this stage that the designated judicial officer reviewed the Plaintiffs complaint and additional administrative evidentiary documents and had clearly determined that the Plaintiff's pleadings should not be dismissed. To which the judicial officer issued an order directing service of the order and the pleadings on the defendants on November 26th 2024 ECF. NO 4 The plaintiff then questions, that if she were indeed time-barred then upon review of plaintiffs documents the judicial officer would have made that determination earlier on and dismissed the case on those grounds. Why would the magistrate judge permit the plaintiffs case to be heard thus far, only to Grant the defendant's Motion to Dismiss with Prejudice and further order the plaintiff to pay defendant's fees.

Nevertheless, here we are. This relates to November 25th when plaintiff had called the courts to amend the complaint coversheet and was informed that her documents were received on November 22nd 2024 at 6:56pm MT, plaintiff called the courts repeatedly that afternoon to challenge and address the discrepancy.

9

Plaintiff was inevitably advised that her complaint had to be filed on November 25th 2024 due to it being received 16 seconds past 5pm MT. Plaintiff continues to question the validity of this timestamp. ECF 29 P.4 Your Honour confirms that the Clerk's office stated the courts Outlook timestamp is November 22 2024 at 6:56pm MT. Yet, ECF 29 P.11 acknowledges the Clerkand Information Technology department show the emails properties as November 23 2024 00:00:16+0000 Refer to ECF 24 Exhibit X  Plaintiff would ask the honorable Magistrate Judge to take notice of Exhibit 1 and 1a. Exhibit 1 P. 13 of OB. PDF 3, the plaintiff is showing that she received an email to her Outlook inbox with a timestamp for March 17 2025 at 2:50 am. Exhibit 1a shows the properties  for said email showing receipt as March 17 2025 at 2:50:47 +0000.

How is it possible that the Federal courts are using the same Outlook mailing system and neither the timestamp for the receipt of Plaintiffs filing of complaint nor the properties of said e-mail match?  One would have to question the legitamacy of the courts records. Especially in comparison to the preponderance of evidence the Plaintiff has compiled thus far.

Although the honorable Magistrate judge asserts that the plaintiff willingly went along with determination of her case ultimately being filed for November 25, 2024, this is not true. In the plaintiff's opposition ECF NO. 22, and supplemental response ECF NO. 28 she explains that she challenged the validity of the information she was being provided by the Clerks of the court to justify them enforcing that she had to file her complaint on November 25th, 2024, the plaintiff felt intimidated and was afraid that the Clerks wouldn't file her amended complaint if she didn't sign for the November 25th, 2024, filing date. Instead of Andreina Garcia-Garcia, a team  lead, taking the initiative to escalate matters, especially when the plaintiff raised the issue of theft on the part of the courts, by not filing her complaint for November 22, 2024, in light of the many timestamps discrepancy's.

Andriena and any one of the other clerks should have followed Fed. R. Civ. P. 5(d)(2)(B) to confer with the Judge and confirm whether he would accept it for November 22nd 2024 filing given the timestamp discrepancy and potential dispute of the plaintiff being time-barred. Andriena overstepped her role as a team lead and made the call to file the Plaintiff's complaint for November 25th 2024.

Furthermore, on Monday November 25th 2024, when the Plaintiff contacted the courts, the Clerk Ethan advised that the Plaintiff was welcome to submit proof of the Timespamp from her Google mail outbox showing 5:56pm CT, the Clerks in response alleged that they could not view the document because of it's . PNG format. Plaintiff has attached the screenshot sent to the courts See **Exhibit W OB PDF 1.** This is relevant because the plaintiff can confirm that she now has two timestamps to reference for her receipt of the time the email was sent.

The November 22 2024 5:56pm Google e-mail timestamp concides with the plaintiff's Desktop time from the screenshot submitted as **Exhibit W.** The screenshot shows the Google outbox timestamp as 3:59pm CT (4:59pm MT) and at the bottom right side corner of the screenshot, is the desktop time which reads 5:57 pm, again this timestamp coincides with both the courts 6:56pm MT and the plaintiff's 5:56pm CT email timestamp. The next issue is that it is impractical for 6:56pm MT to proceed 5:56pm CT, this suggests that the Outlook time for the courts mail box was actually on Eastern Time, not Mountain Time. Plaintiff's 5:56pm Central time is 4:56pm Mountain time. Which means that the plaintiff submitted her pleadings to the COD_ProSe_Filing@cod.uscourts.gov on time, with 4 minutes to spare. Plaintiff further argues, that in the worst case scenarion, it unreasonable given the magnitude of her case to dismiss it with Prejudice on a mere technicallity of 16 seconds past 5. This is an utter miscarriage of justice, given the extent of the egregious factual allegations made against the defendant's, the EEOC, Google, and potentially Microsoft.

These matters warrant serious cause for concern and further investigation, as this issue is not just isolated to the Plaintiff and could possibly become anyone else's experience. "The statutory provision does not distinguish between minutes and seconds. For the average observer, arriving before 5:01pm is arriving 'not later' than 5pm. The phrase 'not later' is particularly instructive in that it indicates the presumption that the seconds from 5:00:00 to 5:00:59 are inclusive to 5pm. As the statute states '5 p.m.', for something to be filed later than '5 p.m.' it would have to be filed at 5:01 p.m." (West et al. V. Wisconsin Elections Commision (7th Cir. 2020) On those grounds, Plaintiff cannot be time-barred.

In light of where we are, based on courts judgement, Plaintiff questions harshness, when defendant Sheila Baranowski was in default on Monday January 27th, 2025, see ECF 6 #2. The Clerks opted to turn a blind eye, without holding her in reproach, in accordance with Fed. R. Civ. P. 55(a).

The Plaintiff further asserts that the Clerks have demonstrated bias in favor of the defendants. This is a reasonable assumption, in that, these were not the only serious examples where the courts actions towards to plaintiff were questionable. The Plaintiff contacted the courts on Monday December 2nd, 2024, to request her case number. The Clerk advised that she receive information that her complaint was filed in the mail, then stated he could pull up the information and give it to her over the phone.

Plaintiff then asked how she could access her summons so that she could get it served on the defendants. The Clerk advised that they'd been issued so she could go ahead and download them off of PACER. Plaintiff asked if she needed to go ahead and create an account. The Clerk responded "yeah."

12

On Tuesday December 3rd the plaintiff attempted to create her PACER account. She was able to add her card information and had completed the entire registration and activation of the account. The following day on December 4th, the Plaintiff logged in and suddenly was brough back to the payments and verification page, which appeared to have undone her activation. Now according to the plaintiff's mobile devices Google mail application; she'd received her first electronic mail notification from the COD_ENotice@cod.uscourts on December 4th, 2024, at 1:01am. The email contents included 5 Docket text with hyperlinks attached to each one of them. One of the Docket text showed that on Tuesday November 26th, 2024, the honorable magistrate judge entered his order. Another read 'Pro Se E-filing Privileges Granted' on 12/3/2024.The header of the e-mail reads 'Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically.' 'To avoid later charges, download a copy of each document during this first viewing' Despite this fact, the plaintiff attempted repeatedly to click on the hyperlinks attached in the email to access and download her free copy of the documents, but for some strange reason, she was never able to select links. It appeared that they were inactive. The Plaintiff confused by the difficulties she was experiencing with the systems, called the courts for assistance and was advised to contact PACER's customer service. The Plaintiff then spent the earlier part of the day in communication with PACER and attempting to activate her account, but was still unsuccessful due to technical issues on the verification of payment information page, the issue prohibited her from completing the account activation, thus preventing her from viewing the Judge's order, and obtaining her summons and complaint entered electronically.

On Friday December 6th, 2024, Plaintiff spent over 40 mins on one call placed after 7am, attempting to contact PACER's customer service. She spoke with an agent called Violetta and requested assistance with completing the activation of the account. Violetta advised that when trying to add the Plaintiffs card information that the zipcode matched, but that the address didn't. Plaintiff asked how this was possible. She stated that the plaintiff needed to make sure the information entered was a match to that of her financial institutions. The Plaintiff and Violetta spent 15 minutes repeatedly entering the the card and address information in different ways to try and get the system to accept the information. The Plaintiff explained that she needed to create and activate her account in order to view her eletronic documents. She further questioned how and why the system completed the entire registration and activation process and then suddenly was undone. The plaintiff needed to know how it was possible. Violetta explained that the system was trying to verify that the information was correct. She alleged that it reflected in their system that the zipcode matched, but that the address didn't. She alleged that in there systems, there was no record of the Plaintiff's card details and then stated that the Plaintiff is able to file 'sic', but that she can't search. They then spent another 10 minutes trying to enter the card information to activate the account. The Plaintiff asked if there was anyway for Violetta to override the system, and complete the activation manually from her end. She advised that their systems didn't have that capability. Plaintiff affirmed the urgency of accessing her account to review the magistrate judges order and explained that experiencing PACER system issues would not be a good enough excuse to justify why the summons and complaint hadn't been served on the defendant's. Violetta then explained that the Plaintiff could view her documents online, but would have to wait several days to receive a letter in the mail which included a 'token' code to be entered online in order to complete the activation of the account.

Plaintiff reminded Violetta again that she was unable to view her free copy of the documents as the hyperlinks in the email she received from COD_ENotice@cod.uscourts.gov were inactive, because when she clicked on them, they would take her to the PACER portal login page, once logged in, the Plaintiff is taken back to the payment verification page. Violetta then alleges that for the preview, the Plaintiff has one active copy available. Plaintiff explains again what happens when she clicks on the Hyperlinks in the email, Violetta then asks is the link is corrupt and if the Plaintiff forwarded the e-mail by any chance, the Plaintiff asked if she meant, "was the email sent anywhere else outside of the email that it was sent to." Violetta states that she was only wondering if the Plaintiff attempted to open the email from another device and possibly forwaded to another address. Plaintiff explained that she never did that. Violetta stated, "like I said this is the option I can give you, we can keep on trying to enter the card and address information to complete the account activation. Plaintiff then stated again, that activating the account can wait and that she just wants to access and download her free copy. Violetta advised that the Plaintiff would need to call back the courts and ask them to send the e-mail again, because maybe the first email was corrupted. She stated that PACER would not send that information. Plaintiff advised Violetta that it was after 8am and that she was going to contact the courts for assistance.

Following the Plaintiff's call with PACER's customer service, she contacts the Clerks office and spent another 17 minutes on the phone trying to resolve an issue that should not have needed to be resolved. To reiterate, plaintiff asserts she's received confirmation that her PACER account was set up and ready to go, until it wasn't. SEE EXHIBIT. Make no mistake, that if the Plaintiff lived in Colorado she would have made her way down to the courts to to obtain the documents in person. Instead, Plaintiff found herself having to higher a courier service for what should have costed under $100, wound up costing nearly $150 after factoring in the costs for printing and the courier having to make two trips back and forth to the courts. Plaintiffs courier

15

arrived at the courts and was advised he had to pay for 150 pages, after contacting the plaintiff, the plaintiff contacted the courts and asked to speak with a supervisor to confirm the correct number of pages being collected for service. Whilst trying the address matters the Plaintiff's courier left for other jobs. After speaking at length with Andreina Garcia-Garcia, she prepared the plaintiff's bundle for the courier to return and collect. Plaintiff did ask Andreina why she wasn't able to view her free copy of the documents, but Andreina stated that she didn't know why, but alleged that the Plaintiff's courier left because he didn't like the Plaintiff's attitude. That was a lie, the courier left because he couldn't wait any longer and that was confirmed by the company. According to Fed. R. Civ. P. 1, the judicial process should be speedy and inexpensive as possible. Yet Plaintiff speculates that courts deliberately attempted to prolong, and delay matters as well as ensure this process would be costly for the Plaintiff.

In summary, plaintiff would like to use this opportunity to speak to Fed. R. Civ. P. 12(b)(6). She will do so by reminding the court of the orientation carried out by defendant Sheila Baranowski on September 28th, 2020. In it, she speaks of customer service reps being the heart and soul of their business (at the time Faneuil now TTEC). That said, we are here today because inspite of her kind words she still knowingly saw fit to deprive said reps of much needed funds. Speaking primarily for myself and my family, that money would have gone so far. I could have invested it into my small business, I could have invested in crypto currency, or I could have put that money into an interest-bearing savings account. The list of possibilities where plaintiff could have deposited her earnings are endless. Instead, Plaintiff finds herself reeling from the monetary loss and retaliatory actions which preceded and followed her discovery of the crime. She is homeless, jobless, injured as a result of the job she had to take to make ends meet. And she is the mother of an albeit beautiful, baby boy, but one she could have better prepared for under better circumstances. The defendants know now, even if they didn't know then what has transpired with the money they gifted to the staff they claim to value.

If it were at all possible, the plaintiff would beseech the defendants to do the right thing. In this case, that would be to accept their transgressions and make right their heinous wrong doings towards plaintiff, rather than seek to enact the ultimate punishment by having this case dismissed, burdening the plaintiff with legal fees she may never be able to pay neither should she ever have to. But, that would only be wishful thinking at this juncture as it is too late for such sentiments coming from them. Thankfully though, it is not too late for the courts to act courageously, fairly, and justly to make right the many wrongs which have occurred in this case. Plaintiff uses a word like courageously because recently, in fact, precisely 3 days before the Judgement was passed in this case on April 17th, 2025, another Honorable Justice from the New Jersey District named Esther Salas, came forward to testify to the crimes that are being committed against other Federal judges. Sadly, she alludes to the fact that Federal Judges have been receiving pizzas at their home addresses.  The  despicable part is that they, the pizzas,

bear the name of the Honorable Judge's deceased son, Daniel Andrel as the sender. God forbid that any Judge related to this case should become a victim of such terrorizing acts. However, if the situation did arise, Plaintiff prays that the pursuit for justice will always prevail no matter what the cost. That said, Plaintiff. pleads with the court to review this case with fresh eyes; taking into account the many, oddities, discrepancies, inconsistencies, bold faced lies and crimes committed and set aside it's judgement by overturning the granting order for motion to dismiss with prejudice and also permitting Plaintiff the opportunity to Motion to amend her initial pleading ECF No 1. In accordance with Fed. R. Civ. P. 15(a)(2)


Sincerely,

Yvette Pinnock

Date: 5/1/2025